MICHIGAN HEAD & SPINE INSTITUTE, PC v STATE FARM
MUTUAL AUTOMOBILE INSURANCE COMPANY

Docket No. 307253. Submitted February 5, 2013, at Detroit. Decided
February 12, 2013, at 9:05 a.m.

Michigan Head & Spine Institute, P.C., brought an action in the 46th
District Court against State Farm Mutual Automobile Insurance
Company, seeking payment of medical expenses under the no-fault
act, MCL 500.3101 *et seq.* Pellumbesha Biba was injured in an
automobile accident. At the time of the accident, she was insured
under a no-fault policy issued by State Farm. Approximately a year
and a half after the accident, Biba executed a release in settlement
of ongoing litigation with State Farm in exchange for $35,000. The
release stated that it generally released and discharged State Farm
from any and all claims and demands for no-fault insurance
benefits, including expenses incurred to the date the release was
executed and expenses incurred at any time in the future that
arose out of the accident. More than six months after signing the
release, Biba began treatment with Michigan Head & Spine
because of injuries that she sustained in the accident. State Farm,
relying on the release, refused to pay Michigan Head & Spine for
that treatment, and Michigan Head & Spine brought suit. The
parties both moved for summary disposition. The court, William J.
Richards, J., granted Michigan Head & Spine's motion and denied
State Farm's motion, concluding that Michigan Head & Spine had
an independent cause of action against State Farm under MCL
500.3112 and that the release did not waive that separate cause of
action. The court entered judgment in favor of Michigan Head &
Spine for $12,450, including costs and attorney fees, plus interest.
On appeal, the Oakland Circuit Court, Shalina D. Kumar, J.,
affirmed. State Farm appealed by leave granted.

The Court of Appeals *held*:

Under MCL 500.3112, personal protection insurance benefits are
payable to or for the benefit of an injured person. The statutory
language contemplates the payment of benefits to someone other
than the injured person. An injured person may waive his or her
entitlement to no-fault benefits and release an insurer from payment
of future benefits in exchange for a settlement. The scope of a release

is governed by the intent of the parties as it is expressed in the release. In this case, the plain language of the release demonstrated that, in exchange for the payment of $35,000, the parties intended to discharge State Farm's liability altogether, including its liability for future medical services. The fact that the parties included a narrow exception in the release for accident-related care provided by the University of Michigan Health System for approximately one year after the release was executed was immaterial to Michigan Head & Spine's claim because treatment at Michigan Head & Spine's facility did not fall under the unambiguous language of the narrowly crafted exception.

Reversed and remanded for entry of summary disposition in favor of State Farm.

INSURANCE — NO-FAULT — LIABILITY — RELEASE — INDEPENDENT CAUSE OF ACTION.

An injured person may execute a release with an insurer that discharges the insurer's liability under the no-fault automobile insurance act, MCL 500.3101 *et seq.*, for future medical services; the scope of a release is governed by the intent of the parties as it is expressed in the release; a medical treatment provider may not maintain an independent cause of action against an insurer to recover payment for medical services provided after the execution of a release by the injured party and the insurer when the scope of the release discharged the insurer's liability for those services (MCL 500.3112).

*Miller & Tischler, P.C.* (by *Alicia M. Oaks*), for Michigan Head & Spine Institute, P.C.

*James C. Rabaut & Associates* (by *Walter H. Smith, Jr.*) and *Gross & Nemeth, P.L.C.* (by *James G. Gross*), for State Farm Mutual Automobile Insurance Company.

Before: MURPHY, C.J., and DONOFRIO and GLEICHER, JJ.

DONOFRIO, J. Defendant appeals by leave granted the trial court's order granting partial summary disposition in favor of plaintiff in this action for payment of medical expenses under the no-fault act, MCL 500.3101 *et seq.* Because defendant's insured executed a release that barred plaintiff's claim for payment from defendant, we

reverse and remand for entry of summary disposition in favor of defendant.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case stems from a motor vehicle accident that occurred on January 20, 2008. Pellumbesha Biba, who was insured under a no-fault policy that defendant had issued, was injured in the accident. On July 30, 2009, in exchange for $35,000 and in settlement of ongoing litigation with defendant, Biba executed a release, which stated in pertinent part:

> For the sole consideration of the amount of $35,000.00, Pellumbesha Biba . . . does hereby release and discharge [defendant] . . . from any and all claims and demands for no-fault insurance benefits, of any kind whatsoever, for any and all expenses incurred to date and/or which may be incurred at any time in the future by or on behalf of Pellumbesha Biba arising out of [the] accident . . . including but not necessarily limited to:

> 1. Other than explained in the paragraph below, any and all allowable expenses of any kind whatsoever for reasonably necessary products, services, and accommodations for [Biba's] care, recovery, or rehabilitation, including, but not limited to, medical, psychiatric, psychological, counseling, dental, chiropractic, medication, mileage, caretaking, attendant care, skilled nursing care, assistant care and/or skilled care from the date of the above accident through the present and/or which may be incurred at any time in the future.

> 2. Any and all lost wages that have been incurred from the time of the above accident to the present and/or which may be incurred at any time in the future which may be caused by or related to the injuries claimed to have been sustained by the undersigned in the subject accident.

> 3. Any and all interest charges which would have been owed or owing pursuant to [MCL 500.3142(3)] of the Michigan No-Fault Act for no-fault benefits released herein.

4. Any and all attorney fees paid and/or payable as a result of the representation of [Biba] in seeking and/or obtaining no-fault benefits released herein.

5. Any and all expenses incurred in obtaining ordinary and necessary services from the time of the above accident to the present and/or which may be incurred at any time in the future for services which may have been paid or payable at the maximum rate of $20 per day pursuant to the Michigan No-Fault Act.

Notwithstanding any other provision in this document, [Biba] is permitted to seek and make a claim for expenses for accident-related medical care provided by the University of Michigan Health System, if that care is provided prior to July 6, 2010. Any expenses incurred after July 6, 2010 by [Biba] and related to the above-described accident will not be considered and [Biba] is forever barred from making claims for such expenses.

[Biba], in further consideration of the aforementioned settlement amount, hereby releases and discharges [defendant] . . . from any and all claims of any kind whatsoever, for any and all damages, whether exemplary, compensatory or punitive, for bad faith, intentional or negligent infliction of emotional distress, mental anguish, defamation, and/or intentional or negligent release of allegedly confidential information arising out of the handling of the claim for no-fault benefits for expenses incurred by and/or on behalf of [Biba] arising out of the above-mentioned accident.

On February 26, 2010, more than six months after signing the release, Biba began treatment with plaintiff because of injuries that she sustained in the accident. Relying on the release, defendant refused to pay plaintiff for its treatment of Biba. On December 17, 2010, plaintiff filed a complaint against defendant in the 46th District Court seeking payment under the no-fault act for the services and accommodations it had rendered to Biba as well as penalty interest, attorney fees, and a judgment declaring that defendant is liable for no-fault

benefits payable to plaintiff for the services and accommodations it provided for Biba's benefit.

Plaintiff moved for partial summary disposition under MCR 2.116(C)(10), arguing that the release did not bar its independent cause of action against defendant for the recoupment of no-fault benefits pursuant to MCL 500.3112. In response, defendant moved for summary disposition under MCR 2.116(C)(7) and (I)(2), maintaining that the release barred plaintiff's claim. The district court granted plaintiff's motion and denied defendant's motion on the basis that plaintiff had an independent cause of action against defendant and the release executed by Biba did not waive plaintiff's separate cause of action. The district court entered a judgment in plaintiff's favor in the amount of $12,450, inclusive of costs and attorney fees, plus interest in the amount of $1,623.60. On appeal, the circuit court affirmed the district court's ruling using the same reasoning.

## II. STANDARD OF REVIEW

We review de novo a lower court's decision on a motion for summary disposition. *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and is properly granted if the evidence in support of the motion fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A motion pursuant to MCR 2.116(C)(7) is properly granted when a claim is barred because of a release. *Rinke v Auto Moulding Co*, 226 Mich App 432, 435; 573 NW2d 344 (1997). "When reviewing a motion under MCR 2.116(C)(7), a reviewing court must con-

sider all affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings and evidence in favor of the nonmoving party." *Anzaldua*, 292 Mich App at 629. Summary disposition under MCR 2.116(I)(2) is appropriate "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment . . . ." Further, the interpretation of a release is a question of law, *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 13; 614 NW2d 169 (2000), that this Court reviews de novo, *Shinkle v Shinkle (On Rehearing)*, 255 Mich App 221, 224; 663 NW2d 481 (2003).

### III. LEGAL ANALYSIS

MCL 500.3112 provides, in relevant part:

> Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents. Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person.

This Court has recognized that the language in MCL 500.3112 "specifically contemplates the payment of benefits to someone other than the injured person . . . ." *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins Co*, 250 Mich App 35, 39; 645 NW2d 59 (2002). "As a result, it is common practice for insurers to directly reimburse health care providers for services rendered to their insureds." *Id*. It is well established that an injured person entitled to no-fault benefits may waive that entitlement and release an insurer from payment of future benefits in exchange for a settlement. *Lewis v Aetna Cas & Surety Co*, 109 Mich App 136, 140; 311

NW2d 317 (1981). The issue presented in this case is whether an insured's release bars a healthcare provider's claim for payment for medical services rendered to the insured after the release was executed.

Courts generally apply principles of contract law to disputes involving the terms of a release. *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010). "The scope of a release is governed by the intent of the parties as it is expressed in the release. If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release." *Cole*, 241 Mich App at 13.

The plain language of the release in this case states that "[f]or the sole consideration of the amount of $35,000.00," Biba "does hereby release and discharge" defendant "from any and all claims and demands for no-fault insurance benefits, of any kind whatsoever, for any and all expenses incurred to date *and/or which may be incurred at any time in the future by or on behalf of*" Biba arising out of the accident, including

> any and all allowable expenses of any kind whatsoever for reasonably necessary products, services, and accommodations for [Biba's] care, recovery, or rehabilitation, including, but not limited to, medical, . . . medication, . . . skilled nursing care, . . . and/or skilled care from the date of the above accident through the present *and/or which may be incurred at any time in the future*. [Emphasis added.]

Thus, the plain language demonstrates that, in exchange for defendant's payment of $35,000, the parties intended to discharge defendant's liability altogether, including its liability for future medical services.[1] The

---

[1] We note that the language "or on behalf of" in the release is similar to the phrase "or for the benefit of" in MCL 500.3112, which this Court has recognized creates an independent cause of action for healthcare providers. *Lakeland Neurocare*, 250 Mich App at 39. Therefore, the use of

language of the release is clear and unambiguous, and the parties' intent, expressed in the release, governs its scope. *Cole*, 241 Mich App at 13.

Plaintiff's argument that there is no evidence that any additional money was paid to cover future medical treatment is without merit. The language of the release plainly includes expenses related to future medical treatment in exchange for defendant's payment of $35,000. Plaintiff also argues that by including in the release the provision allowing Biba to make a claim for expenses for accident-related care provided by the University of Michigan Health System, defendant preauthorized accident-related treatment up to July 6, 2010, nearly one year after the release was executed. Again, plaintiff's argument is without merit. The parties to the release bargained for a narrow exception to the bar on future benefits, and treatment at plaintiff's facility does not fall under the exception. There is nothing ambiguous about the provision, which is limited to "accident-related medical care provided by the University of Michigan Health System . . . prior to July 6, 2010." Because the provision is unambiguous, this Court cannot read anything additional into it. "If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release." *Cole*, 241 Mich App at 13.

We note that plaintiff is not without a remedy. Although Biba provided her insurance claim number on plaintiff's intake form and indicated that bills should be sent to defendant, she also signed a form that stated, "I agree to pay in full any and all charges for medical services provided to me by [plaintiff] not otherwise

the phrase "or on behalf of" in the release is indicative of the parties' intent that the release include healthcare providers' claims for reimbursement.

covered by my Medicare, insurance company or carrier, or other payor." Thus, Biba agreed to be responsible for charges that defendant did not pay. Further, Biba checked "Yes" on the intake form after the question "[i]s there a lawsuit involved?" Directly beneath the question, however, she stated, "it is over (Done)." Therefore, plaintiff was on notice that the lawsuit had concluded and could have inquired into the terms of the settlement before treating Biba. At a minimum, plaintiff could have contacted defendant to verify Biba's assertion that defendant would cover her medical expenses. Biba even provided the insurance adjuster's name and telephone number on the intake form. Accordingly, plaintiff could have verified Biba's claimed entitlement to no-fault benefits, but failed to do so. Moreover, upholding the lower courts' decisions would have a chilling effect on settlements of claims involving future no-fault benefits because the decisions effectively nullify Biba and defendant's settlement. The parties did not intend that result considering the clear language of the release.

Reversed and remanded for entry of summary disposition in favor of defendant. We do not retain jurisdiction. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219.

MURPHY, C.J., and GLEICHER, J., concurred with DONOFRIO, J.