# STATE OF MICHIGAN

# COURT OF APPEALS

WYOMING CHIROPRACTIC HEALTH
CLINIC, PC,

        Plaintiff-Appellee,

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
December 9, 2014
9:00 a.m.

No. 317876
Wayne Circuit Court
LC No. 12-006295-NF

Before: JANSEN, P.J., and TALBOT and SERVITTO, JJ.

TALBOT, J.

Auto-Owners Insurance Company ("Auto-Owners") appeals as of right an order entering judgment in favor of Wyoming Chiropractic Health Clinic, P.C. ("Wyoming Chiropractic"). We affirm.

Auto-Owners argues that the trial court erred in denying its motion for summary disposition because Wyoming Chiropractic, a healthcare provider, did not have standing to bring an action against Auto-Owners, an insurer, for the purpose of obtaining personal injury protection (PIP) benefits under the personal protection benefits provision of the no-fault act.[1] We disagree.

Auto-Owners brought the motion for summary disposition under MCR 2.116(C)(8) and (10). This Court reviews de novo a trial court's ruling on a defendant's motion for summary disposition.[2] This Court also reviews an issue of statutory interpretation de novo.[3]

A motion for summary disposition is properly considered under MCR 2.116(C)(8) or (10) when the movant argues that the nonmovant is not the real party in interest in a suit.[4] Here,

---

[1] MCL 500.3112.

[2] *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010).

[3] *Grimes v Van Hook-Williams*, 302 Mich App 521, 526-527; 839 NW2d 237 (2013).

Auto-Owners argued below that Wyoming Chiropractic was not the real party in interest because Wyoming Chiropractic improperly asserted the rights of the insured individuals, Mary Catoni and her grandson, Kalem Rowe-Catoni, under the no-fault act.[5] Thus, the motion was properly considered under MCR 2.116(C)(8) or (10).

A motion for summary disposition under MCR 2.116(C)(8) is granted if the party opposing the motion " 'has failed to state a claim on which relief can be granted.' "[6] A trial court's decision under MCR 2.116(C)(8) is based solely on the pleadings.[7] Thus, "[a] party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions."[8] "[T]his Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party."[9] Summary disposition under MCR 2.116(C)(8) is only proper when "the claim 'is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery.' "[10] The parties did not support their arguments with documentary evidence, and the trial court based its decision solely on the pleadings. Therefore, this Court's review of Auto-Owners's motion for summary disposition is proper under MCR 2.116(C)(8).

Auto-Owners also argued in its motion for summary disposition that there was an issue of statutory standing, which implicated the trial court's jurisdiction under MCR 2.116(C)(4). Specifically, Auto-Owners asserted that the no-fault act did not give Wyoming Chiropractic standing to bring a cause of action.[11] This Court reviews de novo a claim that a trial court lacks

---

[4] *Leite v Dow Chemical Co*, 439 Mich 920, 920; 478 NW2d 892 (1992). Although *Leite* was an order of the Michigan Supreme Court, the order is binding because "it constitute[ed] a final disposition of an application and contain[ed] a concise statement of the applicable facts and reasons for the decision." *DeFrain v State Farm Mut Auto Ins* Co, 491 Mich 359, 369; 817 NW2d 504 (2012).

[5] See *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 355; 833 NW2d 384 (2013) (stating that "the real-party-in-interest rule is essentially a prudential limitation on a litigant's ability to raise the legal rights of another").

[6] *Dalley*, 287 Mich App at 304, quoting MCR 2.116(C)(8).

[7] *Dalley*, 287 Mich App at 304.

[8] *Id*. at 305.

[9] *Id*. at 304-305.

[10] *Id*. at 305 (citation omitted).

[11] See *Beatrice Rottenberg Living Trust*, 300 Mich App at 355 ("The principle of statutory standing is jurisdictional; if a party lacks statutory standing, then the court generally lacks jurisdiction to entertain the proceeding or reach the merits."); *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010) (stating that summary disposition is proper under MCR 2.116(C)(4) when the trial court lacks subject matter jurisdiction over the case).

jurisdiction to hear a case.[12]  Summary disposition under MCR 2.116(C)(4) is proper "when the trial court 'lacks jurisdiction of the subject matter' " in a case.[13]  This Court examines whether the pleadings, affidavits, depositions, admissions, and documents in the case show that the trial court lacked subject matter jurisdiction.[14]

"Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter."[15]

> Personal protection insurance benefits are payable to *or for the benefit of* an injured person or, in case of his death, to or for the benefit of his dependents. Payment by an insurer in good faith of personal protection insurance benefits, to *or for the benefit of* a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person. . . . [16]

This Court has discussed the issue of whether a healthcare provider may sue an insurer for PIP benefits under the no-fault act.  In *Munson Med Ctr v Auto Club Ins Ass'n*,[17] the plaintiff was a hospital, which sued an insurer for payment of unpaid bills under the no-fault act.  This Court noted that the plaintiff had a "right to be paid for the injureds' no-fault medical expenses" under the no-fault statute.[18]

Additionally, in *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins Co*,[19] the issue before this Court was whether the trial court erred in holding that the plaintiff, a healthcare services provider, was entitled to enforce the penalty interest and attorney fee provisions of the no-fault act against the defendant, a no-fault insurer.  The plaintiff provided rehabilitation services to an insured individual injured in a motor vehicle accident.[20]  The plaintiff filed a claim for payment for healthcare services provided to the insured individual.[21]  In the trial court, the defendant was ordered to pay the plaintiff for the rehabilitation services.[22]  On appeal to this

---

[12] *Packowski*, 289 Mich App at 138.

[13] *Id.*, quoting MCR 2.116(C)(4).

[14] *Packowski*, 289 Mich App at 138-139.

[15] MCL 500.3105(1).

[16] MCL 500.3112 (emphasis added).

[17] 218 Mich App 375, 378; 554 NW2d 49 (1996).

[18] *Id.* at 381.

[19] 250 Mich App 35, 36-37; 645 NW2d 59 (2002).

[20] *Id.* at 36.

[21] *Id.*

[22] *Id.* at 37.

Court, the defendant did not challenge the plaintiff's ability to recover for the medical services that the plaintiff provided to the insured individual.[23] This Court analyzed the plain language of MCL 500.3112 and determined that the plaintiff was entitled to prompt payment because the plaintiff brought a claim for PIP benefits "for the benefit of" the insured when the plaintiff submitted a claim for PIP benefits to the defendant.[24] Therefore, the plaintiff could sue the defendant for enforcement of the penalty interest provision of the no-fault act, which requires an insurer to pay interest if a payment is overdue by more than 30 days.[25] This Court further clarified that the fact that the plaintiff was not the insured individual was "not dispositive" because the no-fault act permits an insurer to pay another person or entity " 'for the benefit of' " the insured individual.[26] This Court stated that it was common practice for insurers to reimburse healthcare providers directly, but this was because MCL 500.3112 allows a healthcare provider to receive payment from an insurer.[27] Thus, industry practice was not the basis for this Court's decision.

Then, in *Regents of the Univ of Mich v State Farm Mut Ins Co*,[28] one issue that this Court discussed was whether the plaintiffs' claim for medical expenses under the no-fault act was barred by the applicable statute of limitations even though the plaintiffs were a political subdivision of the state of Michigan. The plaintiffs were the Regents of the University of Michigan and ran the hospital that provided medical care to the individual involved in an automobile accident.[29] The defendant argued that the plaintiffs' claim was subject to the statute of limitations because the plaintiffs' claim derived from the insured individual's claim.[30] This Court disagreed and clarified that, "[a]lthough plaintiffs may have derivative claims, they also have direct claims for personal protection insurance benefits."[31] This was because the plaintiffs governed a hospital that provided medical care, rather than because the plaintiffs were a political subdivision of the state.[32] This Court cited *Munson* for the proposition that "a hospital that provides medical care is to be reimbursed by the injured person's no-fault insurance company."[33]

---

[23] *Id*.

[24] *Id*. at 38-39.

[25] *Id*.

[26] *Id*. at 39, quoting MCL 500.3112.

[27] *Lakeland Neurocare*, 250 Mich App at 39.

[28] 250 Mich App 719, 731-734; 650 NW2d 129 (2002).

[29] *Id*. at 722-723.

[30] *Id*. at 733.

[31] *Id*.

[32] See *id*.

[33] *Id*., citing *Munson*, 218 Mich App 375.

Thus, this Court explained that the plaintiffs had a direct claim against the defendant for the medical expenses associated with treatment of the insured individual.[34]

Next, in *Borgess Med Ctr v Resto* ("*Resto I*"),[35] this Court cited *Lakeland Neurocare* for the premise "that a party providing benefits to an injured person entitled to no-fault benefits may make a direct claim against a no-fault insurer." This Court clarified that a healthcare provider does not "stand in the shoes" of the injured person, but instead has a direct claim against the insurer under the no-fault act.[36] This Court reiterated the fact that MCL 500.3112 "contemplates the payment of PIP benefits to someone other than the injured person and that a provider of health-care to a person injured in an automobile accident is a no-fault 'claimant' entitled to seek [penalty interest and attorney fees]."[37] Therefore, a healthcare provider that provides benefits to an insured individual has a cause of action against a no-fault insurer.[38] In *Borgess Med Ctr v Resto* ("*Resto II*"),[39] however, the Michigan Supreme Court vacated the majority opinion in *Resto I*, due to the Court's determination of an unrelated issue. The Michigan Supreme Court affirmed this Court's judgment based on the reasoning of the concurring opinion.[40] The concurring opinion did not discuss whether the plaintiff had standing to sue.[41] Therefore, this Court cannot rely on the majority opinion in *Resto I*.[42]

Recently, this Court reiterated the fact that the no-fault act creates an independent cause of action for healthcare providers when it stated, "We note that the language 'or on behalf of' in the release is similar to the phrase 'or for the benefit of' in MCL 500.3112, which this Court has recognized creates an independent cause of action for healthcare providers."[43]

Based on the above, we find that Wyoming Chiropractic had standing to bring a cause of action against Auto-Owners for PIP benefits under the no-fault act. This Court established in *Munson* that a healthcare provider has the "right to be paid for the injureds' no-fault medical expenses."[44] This Court further explained in *Lakeland Neurocare* that when a healthcare

---

[34] See *Regents*, 250 Mich App at 733.

[35] 273 Mich App 558, 569; 730 NW2d 738 (2007), vacated and judgment aff'd 482 Mich 946 (2008).

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] 482 Mich 946; 754 NW2d 321 (2008).

[40] *Id.*

[41] *Resto I*, 273 Mich App at 585 (WHITE, J., concurring).

[42] *Resto II*, 482 Mich at 946.

[43] *Mich Head & Spine Inst, PC v State Farm Mut Auto Ins Co*, 299 Mich App 442, 448 n 1; 830 NW2d 781 (2013), quoting MCL 500.3112, citing *Lakeland Neurocare*, 250 Mich App at 39.

[44] *Munson*, 218 Mich App at 381.

provider submits a claim for payment under the no-fault act, the healthcare provider submits the claim "for the benefit of" the insured.[45] The fact that a healthcare provider submits a claim on behalf of an insured individual allows a healthcare provider to sue to enforce the penalty provisions of the no-fault act.[46] Thus, by implication, a healthcare provider may also bring an action for PIP benefits "for the benefit of" an insured individual.[47] Finally, this Court clarified that its decision in *Lakeland Neurocare* held that a healthcare provider has a direct cause of action to sue an insurer for PIP benefits under the no-fault act.[48] Therefore, Wyoming Chiropractic may bring a claim against Auto-Owners for PIP benefits under the no-fault act.

Auto-Owners argues that this Court did not discuss the issue of whether a healthcare provider is entitled to sue an insurer for PIP benefits in *Lakeland Neurocare* because the issue was uncontested on appeal. Auto-Owners also asserts that this Court's statement in *Lakeland Neurocare* that "it is common practice for insurers to directly reimburse health care providers for services rendered to their insureds" was dicta.[49] However, this Court's reasoning in *Lakeland Neurocare* applies to a healthcare provider's claim for PIP benefits. This Court reasoned that a healthcare provider is entitled to enforce the penalty provision of the no-fault act because a healthcare provider is entitled to payment of the PIP benefits.[50] Therefore, the fact that a healthcare provider is entitled to payment, as well as the fact that a healthcare provider can sue to enforce the penalty provision of the no-fault act, indicates that a healthcare provider may bring a cause of action to recover the PIP benefits under the no-fault act.[51] This interpretation is consistent with this Court's interpretation of *Lakeland Neurocare*.[52] In addition, this Court's holding that MCL 500.3112 entitles a healthcare provider to payment was based on this Court's interpretation of the statute, rather than this Court's statement regarding industry practice.[53] Therefore, Auto-Owners's argument fails.

Auto-Owners cites several cases to support its argument that Wyoming Chiropractic does not have standing to sue under the no-fault act for services provided to Catoni and Rowe-Catoni. Auto-Owners argues that this Court's decision in *Aetna Cas & Surety Co v Starkey*,[54] controls the outcome in this case. In *Starkey*, the insured individual assigned her right to the benefits that

---

[45] *Lakeland Neurocare*, 250 Mich App at 38-39.

[46] *Id*.

[47] See *id*.

[48] *Mich Head & Spine Inst*, 299 Mich App at 448 n 1; *Regents*, 250 Mich App at 733.

[49] *Lakeland Neurocare*, 250 Mich App at 39.

[50] *Id*.

[51] See *id*.

[52] *Mich Head & Spine Inst*, 299 Mich App at 448 n 1.

[53] See *Lakeland Neurocare*, 250 Mich App at 39.

[54] 116 Mich App 640; 323 NW2d 325 (1982).

would become due as a result of her medical treatment to a hospital.[55] This Court held that the assignment was void under the "nonassignability" section of the no-fault act.[56] This Court clarified that the insurer could have paid the hospital for the insured individual's medical bills as long as the insured individual did not file another claim for the same PIP benefits.[57] This Court further clarified that there were no exceptions to the statutory prohibition against assignment of benefits.[58]

This case can be distinguished from *Starkey* because Catoni did not assign her rights under her contract with Auto-Owners to Wyoming Chiropractic. Instead, Wyoming Chiropractic asserts a direct cause of action for the value of the chiropractic services it provided to Catoni and Rowe-Catoni. Furthermore, Wyoming Chiropractic only seeks payment for the services provided to Catoni and Rowe-Catoni, while the assignment in *Starkey* was not limited to services already performed or services provided by the plaintiff.[59] To the extent that *Starkey* prohibits a direct cause of action by a healthcare provider against an insurer under the no-fault act, *Starkey* has been overruled by *Munson*, *Lakeland Neurocare*, and *Regents*.[60]

Auto-Owners cites *In re Hales Estate*,[61] for the proposition that Wyoming Chiropractic does not have standing to sue Auto-Owners for PIP benefits. However, this Court in *Hales* considered the issue of whether a mother of an adult son who acted as the son's guardian-conservator and paid a portion of the son's medical expenses could recover duplicate PIP benefits under the son's no-fault policy.[62] This Court held that the mother was not entitled to subrogation with regard to the expenses that the defendant paid for the son's medical care.[63] This case can be distinguished from *Hales* because Wyoming Chiropractic alleges that it was entitled to reimbursement from Auto-Owners for chiropractic services performed on Catoni and

---

[55] *Starkey*, 116 Mich App at 642.

[56] *Id*. at 646.

[57] *Id*.

[58] *Id*.

[59] See *id*. at 642.

[60] See *Regents*, 250 Mich App at 733; *Lakeland Neurocare*, 250 Mich App at 39; *Munson*, 218 Mich App at 381; see also MCR 7.215(J)(1) (providing that this Court must follow its holding in a published decision issued on or after November 1, 1990, that has not been modified or reversed by the Michigan Supreme Court or a special panel of this Court).

[61] 182 Mich App 55, 58; 451 NW2d 867 (1990).

[62] *Id*. at 56-60.

[63] *Id*. at 59-60.

Rowe-Catoni, while the plaintiff in *Hales* sought to recover duplicate benefits under her son's no-fault policy.[64]

Auto-Owners also cites to *Belcher v Aetna Cas & Surety Co*,[65] in which the Michigan Supreme Court stated that PIP benefits are "payable only to injured persons or surviving dependents of the injured person." However, the issue in *Belcher* was whether survivors of uninsured, deceased individuals could recover survivors' loss benefits.[66] The Michigan Supreme Court held that the survivors could not recover survivors' loss benefits.[67] The Michigan Supreme Court did not discuss whether a healthcare provider could recover PIP benefits under the no-fault act or interpret the meaning of the phrase "for the benefit of" in MCL 500.3112. Thus, this case can be distinguished from *Belcher* since Wyoming Chiropractic argues that it is directly entitled to medical benefits, rather than survivors' loss benefits, under the no-fault act.

In addition, the public policy goals of the no-fault act support allowing a healthcare provider to have standing to sue an insurer for PIP benefits. Auto-Owners argues that this rule will force insurers to defend multiple lawsuits at different times and in different courts. Auto-Owners also points out that insurers face an increased risk of having to pay penalty interest if healthcare providers have standing to sue because insurers will not be able to concentrate their efforts on paying insured individuals on time and at "fair and equitable rates." However, as discussed above, this Court interpreted the plain language of MCL 500.3112 as allowing healthcare providers to maintain direct causes of action against insurers to recover PIP benefits under the no-fault act.[68] Thus, the Michigan Legislature addressed the public policy issues related to healthcare provider standing when it drafted MCL 500.3112.[69]

Furthermore, public policy favors provider suits. The goal of the no-fault act is " 'to provide victims of motor vehicle accidents with assured, adequate, and prompt reparation for certain economic losses.' "[70] The no-fault act was designed to remedy " 'long delays, inequitable payment structure, and high legal costs' " in the tort system.[71] Allowing a healthcare

---

[64] See *id*. at 56-59; see also *Hatcher v State Farm Mut Auto Ins Co*, 269 Mich App 596, 599-600; 712 NW2d 744 (2005) (holding that a mother could not bring a derivative action for PIP benefits on behalf of her daughter because the right to bring the action belonged to the daughter).

[65] 409 Mich 231, 243-244; 293 NW2d 594 (1980).

[66] *Id*. at 236-244.

[67] *Id*. at 243-244.

[68] See *Mich Head & Spine Inst*, 299 Mich App at 448 n 1; *Regents*, 250 Mich App at 733; *Lakeland Neurocare*, 250 Mich App at 39.

[69] See, e.g., *Woodman ex rel Woodman v Kera LLC*, 486 Mich 228, 245; 785 NW2d 1 (2010) (recognizing the Michigan Legislature's superiority in creating public policy).

[70] *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 595; 648 NW2d 591 (2002) (citation omitted).

[71] *Id*. (citation omitted).

provider to bring a cause of action expedites the payment process to the healthcare provider when payment is in dispute. Thus, provider standing meets the goal of prompt reparation for economic losses. Healthcare provider standing also offers a healthcare provider a remedy when an insured individual does not sue an insurer for unpaid PIP benefits, thus preventing inequitable payment structures and promoting prompt reparation. Therefore, public policy supports this Court's prior opinions. For the reasons stated above, the trial court properly denied Auto-Owners's motion for summary disposition because Wyoming Chiropractic had standing to sue Auto-Owners for PIP benefits under the no-fault act.

Affirmed.

/s/ Michael J. Talbot
/s/ Kathleen Jansen
/s/ Deborah A. Servitto