# STATE OF MICHIGAN

# COURT OF APPEALS

TREZIYAH TOMA,

        Plaintiff-Appellee,

v

ST. PETER MEDICAL CENTER and LN
TRANSPORTATION,

        Intervening Plaintiffs-Appellants,

and

AUTO CLUB INSURANCE ASSOCIATION,

        Defendant.

UNPUBLISHED
April 20, 2017

No. 330585
Wayne Circuit Court
LC No. 13-010170-NI

Before: FORT HOOD, P.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

Intervening plaintiffs, St. Peter Medical Center (SPMC) and LN Transportation (LN), appeal as of right the order granting plaintiff's motion to enforce attorney Nazek A. Gappy's charging lien of $18,648 against the proceeds of a settlement between defendant and intervening plaintiffs. We reverse.

This case arises from a motor vehicle accident in which plaintiff suffered injuries. Plaintiff was represented by Gappy at all relevant times. Plaintiff filed a complaint against defendant in the trial court for first-party no-fault benefits and uninsured motorist benefits. Several months later, intervening plaintiffs moved to intervene. Another law firm represented intervening plaintiffs when they moved to intervene. The trial court granted the motion to intervene. Over one year later, intervening plaintiffs and defendant entered into a settlement agreement and release.

Plaintiff then filed an attorney fee lien against the settlement proceeds paid to SPMC, as well as a motion to enforce the attorney fee lien. According to plaintiff, Gappy referred plaintiff to a physician at SPMC. Plaintiff contended, "St. Peter Medical Center and attorney Gappy had a working relationship wherein [Gappy] provided legal representation and charged a one-third attorney fee after deduction of costs. This was the manner in which all cases were handled between the medical center and the attorney's office." Thus, according to plaintiff, intervening

-1-

plaintiffs had actual notice of the potential lien. According to plaintiff, "[d]efendant approved payment of $56,000 in medical payments to St. Peter Medical Center prior to suit being filed but refused to actually issue checks to St. Peter [Medical] Center necessitating a lawsuit against the Defendant." Therefore, plaintiff requested that the court grant Gappy a lien of $18,648, which constituted ⅓ of the $56,000 payment. Intervening plaintiffs filed a response, contending that they did not retain Gappy. The trial court agreed with plaintiff and entered an order enforcing a charging lien of $18,648.

Intervening plaintiffs argue that the trial court improperly granted Gappy a charging lien against the proceeds from the settlement agreement. We agree.

We review for an abuse of discretion the trial court's decision to impose an attorney charging lien. *Reynolds v Polen*, 222 Mich App 20, 24; 564 NW2d 467 (1997). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). However, "[w]hether a lien is authorized in a particular case is a question of law," and we review "review questions of law de novo." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 281; 761 NW2d 761 (2008). In addition, the proper interpretation of a statute or court rule is reviewed de novo. *Taylor v Mich Petroleum Technologies, Inc*, 307 Mich App 189, 194; 859 NW2d 715 (2014). Finally, we review de novo the proper interpretation of a rule of professional conduct. *Grievance Administrator v Fieger*, 476 Mich 231, 240; 719 NW2d 123 (2006).

A charging lien constitutes " 'an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit.' " *Souden v Souden*, 303 Mich App 406, 411; 844 NW2d 151 (2013) (citation omitted). A charging lien is a common-law right and it is not recognized by statute. *Id*. "The charging lien 'creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services.' " *Id*. (citation omitted). Furthermore, "[t]he ability to enforce an attorney's charging lien is ancillary to a trial court's exercise of jurisdiction over the cases before it." *Id*. at 412. This Court has explained that

> [t]he [attorney's charging] lien exists as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their clients. It does provide a means of securing the legitimate interest of the attorney in payment for his services and expenses on behalf of the client, but it is subject to the control of the court for the protection of the client and third parties as well . . . . [*Id*. at 411 (citation and quotation marks omitted; alteration in original).]

The trial court abused its discretion by granting the motion to enforce a charging lien because (1) Gappy failed to establish an attorney-client relationship with intervening plaintiffs, (2) Gappy failed to establish that her efforts secured the settlement, and (3) Gappy's contingent fee agreement violated the Michigan Court Rules and the Michigan Rules of Professional Conduct. First, plaintiff's claim fails because Gappy failed to demonstrate an attorney-client relationship with intervening plaintiffs. "An attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered." *Plunkett & Cooney, PC v Capital Bancorp LTD*, 212 Mich App 325, 329; 536 NW2d 886 (1995). Although plaintiff contended in her motion to enforce the charging lien that Gappy had a "working relationship"

-2-

with SPMC, plaintiff did not support her claim with evidence in the record. Therefore, plaintiff failed to establish that Gappy had an attorney-client relationship with intervening plaintiffs.

On appeal, plaintiff contends that she did not need to establish that Gappy had an attorney-client relationship with intervening plaintiffs. She points to a published order of our Supreme Court in *Miller v Citizens Ins Co*, 490 Mich 905 (2011), in support of her position. However, *Miller* is distinguishable from the instant case. In *Miller*, a medical provider appealed an order granting attorney fees, which proportionately reduced the amount that the medical provider recovered for services provided to the plaintiff following an automobile accident. *Miller v Citizens Ins Co*, 288 Mich App 424, 426; 794 NW2d 622 (2010), aff'd in part and rev'd in part, 490 Mich 905 (2011). The plaintiff in *Miller* signed a contingent fee agreement with the plaintiff's attorney. *Id*. at 434. The plaintiff filed a lawsuit against the no-fault insurer, and that case settled. *Id*. at 427, 434-435. This Court affirmed the trial court's decision regarding the attorney fees, indicating that the plaintiff created a common fund that benefitted others, and, therefore, the plaintiff's attorney was entitled to the attorney fees. *Id*. at 437. However, this Court noted throughout the opinion that the medical provider had the opportunity to intervene in the case, but chose not to do so. *Id*. 435, 438. This Court pointed out that the medical provider was therefore "spared the expense of litigating [its] own claims." *Id*. at 435. Our Supreme Court reversed this Court's decision in part. *Miller*, 490 Mich at 905. The Court explained that while this Court correctly concluded that the medical provider was not liable to pay the plaintiff's attorney fees under the no-fault act, MCL 500.3101 *et seq.*, this Court incorrectly concluded that the common-fund exception to the American Rule regarding attorney fees applied in the case because no common fund existed. *Id*.

*Miller* did not abolish the need to establish an attorney-client relationship with a medical provider in order to obtain attorney fees when that medical provider intervenes in the no-fault case. In *Miller*, this Court twice pointed out that the medical provider had the opportunity to intervene in the case, but chose not to do so. *Miller*, 288 Mich App at 435, 438. In this case, intervening plaintiffs chose to intervene and bear the expense of their case. Additionally, this case differs from *Miller* because the settlement in *Miller* was between the plaintiff and the no-fault insurer. In this case, the medical providers settled with the no-fault insurer. *Id*. at 434-435. Furthermore, our Supreme Court reversed this Court's holding regarding the common-fund exception to the American rule regarding attorney fees. See *Miller*, 490 Mich at 905. Accordingly, we conclude that *Miller* does not support plaintiff's argument that Gappy did not need to establish an attorney-client relationship in order to recover attorney fees.

Second, plaintiff failed to establish that the settlement recovery in the case was the result of Gappy's services. Plaintiff asserted in the motion to enforce the charging lien that defendant approved a payment of $56,000 to SPMC before suit was filed, but then refused to make the payment. However, plaintiff failed to explain the connection between defendant's agreement to pay $56,000 and Gappy's work in the case. While defendant may have initially approved the medical payments, this does establish that the settlement was the result of Gappy's services. Furthermore, intervening plaintiffs intervened in the case in March 2014, which was two months before case evaluation and over a year before the case was settled. Another attorney represented intervening plaintiffs from the time they intervened in the case until the case settled. Therefore, plaintiff cannot establish that the settlement recovery was the result of Gappy's services.

Plaintiff points to additional evidence in support of the position that Gappy had an agreement with intervening plaintiffs and performed the work necessary for intervening plaintiffs to recover from defendant. She points to the explanations of benefits that were attached to her response to the motion for reconsideration and contends that they demonstrate that Gappy represented intervening plaintiffs when defendant approved the medical bills. However, the explanations of benefits do not establish that intervening plaintiffs and Gappy had an attorney-client relationship or that the settlement recovery was the result of Gappy's services. We first note that plaintiff did not attach the explanations of benefits to the motion to enforce the charging lien. Therefore, the trial court did not rely on the explanation of benefits in deciding the issue. Further, the explanations of benefits indicate the amounts charged and amounts allowed for certain medical services and procedures, and Gappy is noted as receiving an "attorney copy" of the explanations of benefits. These documents do not establish that Gappy was working on behalf of intervening plaintiffs. Instead, Gappy's name merely appears on the explanations of benefits as the "attorney," and there is no indication whether she was the attorney for plaintiff or for intervening plaintiffs. Additionally, the documents do not establish that Gappy performed any services on behalf of intervening plaintiffs that resulted in the settlement recovery.

Plaintiff also points to the fact that SPMC's billing company had contact with Gappy before she filed the lawsuit. She relies on the deposition of Yasmine Naman, the owner of the billing company, to support her argument. However, the billing company's contact with Gappy before litigation commenced does not establish that Gappy had an attorney-client relationship with intervening plaintiffs or that the recovery was the result of her services. First, plaintiff did not attach Naman's deposition to her motion to enforce a charging lien, and, therefore, the court did not consider Namas's testimony when it granted the lien. In addition, Naman's deposition does not support plaintiff's assertion that Gappy had a working agreement with intervening plaintiffs or that the settlement was reached because of Gappy's services. During the deposition, Naman admitted that her staff had conversations with Gappy regarding the claim. However, when Gappy asked Naman if she understood that Gappy was acting on behalf of SPMC, Naman denied knowledge of Gappy's role in the lawsuit. Therefore, Gappy's contact with SPMC's medical billing company does not establish an attorney-client relationship with intervening plaintiffs or that the settlement was the result of her services.

Additionally, SPMC's patient notes for plaintiff do not establish an attorney-client relationship. Although one of the patient note entries states, "AAA REJECTION DATED 12/28/12 CLAIM NUMBER NOT VALID. PER PRACTICE FUSION GAPPY IS ATTNY," the note does not establish that Gappy was the attorney *for intervening plaintiffs* or that she performed any work on intervening plaintiffs' behalf. Plaintiff also attached a letter from Gappy to defendant to her response to intervening plaintiffs' motion for reconsideration. In the letter, Gappy noted that she represented plaintiff and stated, "Please note that this office retains a lien on any and all benefits paid through this claim." However, plaintiff's assertion of an attorney lien does not establish that intervening plaintiffs entered into an agreement with her or that she performed any work on their behalf. Accordingly, plaintiff failed to support her motion to enforce an attorney lien with evidence in the record.

Furthermore, the trial court abused its discretion by enforcing an unethical charging lien. MCR 8.121(F) provides, "Contingent fee arrangements made by an attorney with a client must be in writing and a copy provided to the client." In addition, MRPC 1.5(c) provides that a

contingent-fee agreement must be in writing and must state the method by which the fee will be determined. According to plaintiff, "St. Peter Medical Center and attorney Gappy had a working relationship wherein [Gappy] provided legal representation and charged a one-third attorney fee after deduction of costs." The trial court enforced a lien of $18,648, or ⅓ of the $56,000 payment that plaintiff alleged defendant agreed to pay. Gappy failed to produce a written contingent fee agreement in the trial court and acknowledges on appeal that no such agreement existed. Accordingly, the trial court abused its discretion by enforcing a contingent fee agreement that was prohibited by a court rule and a rule of professional conduct.

Plaintiff argues that the charging lien was appropriate under a quantum meruit theory. However, the trial court enforced the charging lien as a contingent fee, rather than under a quantum meruit approach. The court enforced a charging lien of $18,648, which constituted a ⅓ contingent fee on the $56,000 payment that defendant allegedly agreed to pay. Therefore, the trial court enforced a lien on the basis that it constituted a contingent fee. Furthermore, even assuming that the court granted the charging lien under a quantum meruit approach, Gappy was not entitled to the lien. A claim of quantum meruit is an equitable claim. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 199; 729 NW2d 898 (2006). However, it is axiomatic that "a party who comes into equity must come with clean hands." *Richards v Tibaldi*, 272 Mich App 522, 537; 726 NW2d 770 (2006). "The clean-hands doctrine closes the doors of equity to one tainted with inequitableness or bad faith relative to the matter in which he or she seeks relief, regardless of the improper behavior of the defendant." *Id*. Gappy's alleged agreement constituted a violation of both MCR 8.121(F) and MRPC 1.5(c) because the agreement was not in writing. Accordingly, Gappy would not be entitled to attorney fees under a quantum meruit theory.

Finally, plaintiff contends that the trial court should not have permitted intervening plaintiffs to intervene in this case and that this Court's opinions indicating that a healthcare provider has the right to pursue a direct cause of action against a no-fault insurer were wrongly decided. Plaintiff contends that this Court improperly interpreted MCL 500.3112 in *Chiropractors Rehab Group, PC v State Farm Mut Auto Ins Co*, 313 Mich App 113; 881 NW2d 120 (2015), lv held in abeyance 882 NW2d 132 (2016), and *Wyoming Chiropractic Health Clinic, PC v Auto-Owners Ins Co*, 308 Mich App 389; 864 NW2d 598 (2014). However, this Court is bound to follow the holding in these published cases. See MCR 7.215(J)(1) (explaining that a panel of this Court must follow the rule of law established by a prior published opinion of this Court issued on or after November 1, 1990, if that opinion has not been reversed or modified by our Supreme Court, or by a special panel of this Court). Accordingly, plaintiff's claim that this Court improperly determined that a medical provider has a direct cause of action against a no-fault insurer is without merit.

Reversed. As the prevailing party, intervening plaintiffs may tax costs. See MCR 7.219(A).

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra

-5-