# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

Reporter of Decisions:
Kathryn L. Loomis

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

COVENANT MEDICAL CENTER, INC v STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

Docket No. 152758. Argued December 7, 2016 (Calendar No. 5). Decided May 25, 2017.

Covenant Medical Center, Inc., brought suit in the Saginaw Circuit Court against State Farm Mutual Automobile Insurance Company to recover payment under the no-fault act, MCL 500.3101 *et seq.*, for medical services it provided to State Farm's insured, Jack Stockford, following an automobile accident in which Stockford was injured. Covenant sent bills totaling $43,484.80 to State Farm for healthcare services it provided to Stockford. State Farm denied payment on November 15, 2012. In the meantime, Stockford had filed suit against State Farm for no-fault benefits, including personal protection insurance (PIP) benefits. Without Covenant's knowledge, Stockford and State Farm settled Stockford's claim for $59,000 shortly before Covenant initiated its action against State Farm. As part of the settlement, Stockford released State Farm from liability for all allowable no-fault expenses and any claims accrued through January 10, 2013. State Farm moved for summary disposition under MCR 2.116(C)(7) (dismissal due to release) and MCR 2.116(C)(8) (failure to state a claim). The court, Robert L. Kaczmarek, J., granted State Farm's motion under MCR 2.116(C)(7), explaining that Covenant's claim was dependent on State Farm's obligation to pay no-fault benefits to Stockford, an obligation that was extinguished by the settlement between Stockford and State Farm. Covenant appealed by right in the Court of Appeals, and in a published per curiam opinion, the Court of Appeals, M. J. KELLY, P.J., and MURRAY and SHAPIRO, JJ., reversed the circuit court's decision. 313 Mich App 50 (2015). According to the Court, the settlement with Stockford did not discharge State Farm's liability to Covenant because State Farm had notice of Covenant's claim for no-fault benefits for the benefit of Stockford. Because State Farm had notice of Covenant's claim, State Farm's settlement with Stockford was not a good-faith payment of no-fault benefits it owed. The Court of Appeals concluded that the circumstances of this case were addressed in MCL 500.3112, which required State Farm to seek a court order directing the proper allocation of benefits when, in addition to a first-party claim for benefits, there was also a third-party claim for payment of no-fault benefits. The Supreme Court granted State Farm's application for leave to appeal. 499 Mich 941 (2016).

In an opinion by Justice ZAHRA, joined by Chief Justice MARKMAN and Justices MCCORMACK, VIVIANO, and LARSEN, the Supreme Court *held*:

The plain language of the no-fault act, MCL 500.3101 *et seq.*, governs the administration of Michigan's no-fault laws regarding claims and benefits involving automobile accidents. Only two sections of the no-fault act mention healthcare providers, MCL 500.3157 and MCL 500.3158, and neither of those sections confers on a healthcare provider a right to sue for reimbursement of the costs of providing medical care to an injured person. Those sections address, respectively, the charges a healthcare provider may assess for treatment of an insured and the requirement that a healthcare provider make an insured's medical records and treatment information available to the insurer. Two additional relevant provisions, MCL 500.3105 and MCL 500.3107, address, respectively, an insurer's obligation to pay personal protection insurance (PIP) benefits and the allowable expenses for which PIP benefits must be paid. Nothing in the language of those two provisions authorizes a healthcare provider to bring a direct action against an insurer for payment of PIP benefits. Nor does the language appearing in MCL 500.3107(1)(a), which makes benefits payable for allowable expenses consisting of all reasonable charges incurred, create a right of action on behalf of healthcare providers because healthcare providers do not incur the charges or become liable for them; charges for healthcare are incurred most commonly by patients, who are the ones that become liable for paying those charges. Furthermore, although MCL 500.3112 allows no-fault insurers to directly pay PIP benefits to a healthcare provider for expenses incurred by an insured, MCL 500.3112 does not entitle a healthcare provider to bring a direct action against an insurer for payment of PIP benefits. That statutory provision simply allows a no-fault insurer to satisfy its obligation to an insured by direct payment to the injured person or direct payment to the healthcare provider for the benefit of an injured person. MCL 500.3112 also provides that a no-fault insurer's payment made in good faith either to or for the benefit of an insured satisfies its obligation to the insured to the extent of the payment if the insurer did not previously receive written notice of a third-party's claim for benefits. The remainder of MCL 500.3112 addresses an interested party's right to apply to the circuit court for an order awarding and apportioning payment to entitled persons, and it authorizes the circuit court to designate payees and make an equitable apportionment among those payees, including dependents and survivors of the injured person. Finally, no language appearing in MCL 500.3114 or MCL 500.3115 contemplates a statutory cause of action for healthcare providers against a no-fault insurer. MCL 500.3114 and MCL 500.3115 concern the priority of insurers from which an injured person is entitled to receive benefits when multiple insurers are involved. In short, under the language of the no-fault act, a healthcare provider does not possess a statutory cause of action against a no-fault insurer for the payment of no-fault benefits.

Reversed and remanded for entry of summary disposition in defendant's favor.

Justice BERNSTEIN, dissenting, concluded that although the no-fault act does not expressly grant a healthcare provider a direct cause of action against a no-fault insurer for the payment of PIP benefits, MCL 500.3112 supports the existence of such a cause of action. The language of the no-fault act nowhere expressly defines "claimant" but provisions of the no-fault act, like MCL 500.3112, state which parties may receive no-fault benefits, and the right to receive benefits is necessary in order for a party to claim those benefits. MCL 500.3112 provides that PIP benefits are payable either to the injured person or to someone else for the benefit of the injured person; payment to a healthcare provider is payment for the benefit of the injured person. To conclude that injured persons are entitled to a claim for benefits and that

healthcare providers are not is inconsistent with the language of MCL 500.3112. The language of the no-fault act does not expressly confer on *any* party the right to directly sue a no-fault insurer for no-fault benefits. If an express provision giving a party the right to sue an insurer is required, then no party—not even the injured person—is authorized to sue a no-fault insurer to compel payment of no-fault benefits. But to hold that an injured person is the only party entitled to make a claim to enforce his or her right to receive benefits renders surplusage the language in the no-fault act that permits payment to a third party.

Justice WILDER did not participate in the disposition of this matter.

©2017 State of Michigan

# OPINION

Chief Justice:        Justices:
Stephen J. Markman    Brian K. Zahra
                      Bridget M. McCormack
                      David F. Viviano
                      Richard H. Bernstein
                      Joan L. Larsen
                      Kurtis T. Wilder

FILED May 25, 2017

STATE OF MICHIGAN

SUPREME COURT

COVENANT MEDICAL CENTER, INC.,

      Plaintiff-Appellee,

v                                                    No. 152758

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except WILDER, J.)

ZAHRA, J.

This case presents the significant question of whether a healthcare provider possesses a statutory cause of action against a no-fault insurer to recover personal protection insurance benefits for allowable expenses incurred by an insured under the no-fault act, MCL 500.3101 *et seq*. Relying on several of its previous decisions, the Court of Appeals concluded that it is "well settled that a medical provider has independent

standing to bring a claim against an insurer for the payment of no-fault benefits."[1]  The insurer sought leave to appeal in this Court, and we granted the application to consider in part that conclusion, which this Court has never addressed.[2]

A thorough review of the statutory no-fault scheme reveals no support for an independent action by a healthcare provider against a no-fault insurer.  In arguing that healthcare providers may directly sue no-fault insurers, plaintiff primarily relies on MCL 500.3112, which provides, in pertinent part, that "[p]ersonal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents."  While this provision undoubtedly allows no-fault insurers to directly pay healthcare providers for the benefit of an injured person, its terms do not grant healthcare providers a statutory cause of action against insurers to recover the costs of providing products, services, and accommodations to an injured person.  Rather, MCL 500.3112 permits a no-fault insurer to discharge its liability to an injured person by paying a healthcare provider directly, on the injured person's behalf.  And further, no other provision of the no-fault act can reasonably be construed as bestowing on a healthcare provider a statutory right to directly sue no-fault insurers for recovery of no-fault benefits.  We therefore hold that healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act.  The Court of Appeals caselaw concluding to the contrary

---

[1] See *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 313 Mich App 50, 54; 880 NW2d 294 (2015), and cases cited therein.

[2] *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 499 Mich 941 (2016).

2

is overruled to the extent that it is inconsistent with this holding. We reverse the judgment of the Court of Appeals in this case and remand the case to the Saginaw Circuit Court for entry of an order granting summary disposition to defendant.

## I. FACTS AND PROCEDURAL HISTORY

On June 20, 2011, Jack Stockford was injured in a motor vehicle accident. His no-fault insurer was defendant, State Farm Mutual Automobile Insurance Company. Stockford was treated on at least three occasions by plaintiff, Covenant Medical Center, a healthcare provider. Plaintiff sent defendant bills on July 3, August 2, and October 9, 2012, for medical services it provided to Stockford. It is undisputed that defendant received the bills, which totaled $43,484.80. Defendant denied coverage on or about November 15, 2012, and refused to pay the bills.

On June 4, 2012, Stockford filed suit against defendant for no-fault benefits, including personal protection insurance (PIP) benefits.[3] Stockford settled his case with defendant on April 2, 2013, for $59,000. In connection with the settlement, Stockford executed a broad release, which encompassed all allowable no-fault expenses, including medical bills, and "any and all past and present claims incurred through January 10, 2013[.]"

---

[3] No-fault benefits are broader than PIP benefits. For instance, no-fault benefits include, *inter alia*, property-protection benefits and work-loss benefits. See *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 30; 528 NW2d 681 (1995). The instant case concerns healthcare providers and, in turn, only PIP benefits.

Plaintiff brought the instant suit against defendant on April 25, 2013, seeking payment of its billed expenses.[4] Plaintiff asserted that it learned of the settlement and release when defendant answered its complaint in May 2013. In September 2013, defendant moved for summary disposition under MCR 2.116(C)(7) (dismissal due to release) and MCR 2.116(C)(8) (failure to state a claim). Defendant maintained that plaintiff's claim for benefits was derivative of Stockford's claim, which was extinguished by the release. Therefore, defendant argued, plaintiff no longer possessed a claim against it.

In an opinion dated May 15, 2014, the circuit court granted summary disposition to defendant pursuant to MCR 2.116(C)(7). The court agreed with defendant that Stockford's release was dispositive, holding that any claim plaintiff may have had against Stockford's insurer was "dependent on the insurer being obligated to pay benefits to the provider on behalf of its insured" and that the "release end[ed] the insurer's obligation to pay benefits to or on behalf of its insured under its contract of insurance."

Plaintiff appealed by right in the Court of Appeals. In a published per curiam opinion, the panel reversed the circuit court's decision, concluding that defendant's liability to plaintiff could not be discharged by defendant's settlement with Stockford because defendant had received written notice of plaintiff's claim before the settlement, presumably from the bills that plaintiff mailed to defendant.[5] The panel opined that, in

_____

[4] Though initially filed in the Kent Circuit Court, the case was transferred to the Saginaw Circuit Court in July 2013.

[5] *Covenant*, 313 Mich App at 53.

4

this situation, the settlement could not constitute a "good faith" payment covering the noticed third-party claim for purposes of MCL 500.3112. The panel reasoned in part:

> [W]hile a provider's right to payment from the insurer is created by the right of the insured to benefits, an insured's agreement to release the insurer in exchange for a settlement does not release the insurer with respect to the provider's noticed claims unless the insurer complies with MCL 500.3112.[6]

According to the panel, in order to discharge liability under these circumstances, MCL 500.3112 "requires that the insurer apply to the circuit court for an appropriate order directing how the no-fault benefits should be allocated."[7] The Court of Appeals therefore reversed the circuit court's order granting summary disposition in favor of defendant and remanded the case for further proceedings.

Defendant applied for leave to appeal in this Court. As previously mentioned, this Court granted leave to consider in part "whether a healthcare provider has an independent or derivative claim against a no-fault insurer for no-fault benefits[.]"[8]

## II. STANDARD OF REVIEW AND RULES OF STATUTORY INTERPRETATION

The circuit court granted summary disposition under MCR 2.116(C)(7), which applies when "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of release . . . ." This Court reviews de novo a court's decision to grant summary disposition.[9]

---

[6] *Covenant*, 313 Mich App at 54.

[7] *Id*. at 53.

[8] *Covenant*, 499 Mich 941.

[9] *Horace v Pontiac*, 456 Mich 744, 749; 575 NW2d 762 (1998).

5

This Court also reviews de novo questions of statutory interpretation.[10] The role of this Court in interpreting statutory language is to "ascertain the legislative intent that may reasonably be inferred from the words in a statute."[11] "The focus of our analysis must be the statute's express language, which offers the most reliable evidence of the Legislature's intent."[12] When the statutory language is clear and unambiguous, judicial construction is not permitted and the statute is enforced as written.[13] "[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself."[14]

## III. ANALYSIS

The Court of Appeals concluded that the release executed between Stockford and defendant did not release defendant from liability regarding plaintiff's claim. This conclusion was premised on the notion that a healthcare provider who provides services to a person injured in a motor vehicle accident possesses its *own* statutory claim against the injured person's no-fault insurer to compel payment for services rendered on behalf of the insured. The Court of Appeals panel in the instant case did not critically dissect the pertinent statutory provisions of the no-fault act to find support for this premise but

---

[10] *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014).

[11] *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008).

[12] *Badeen v PAR, Inc*, 496 Mich 75, 81; 853 NW2d 303 (2014).

[13] *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008).

[14] *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

instead followed previous decisions of the Court of Appeals, which it was bound to do.[15] Plaintiff urges us to likewise follow the long line of cases from the Court of Appeals recognizing that a healthcare provider may sue a no-fault insurer to recover PIP benefits under the no-fault act. We decline plaintiff's invitation, relying instead on the language of the no-fault act to conclude that a healthcare provider possesses no statutory cause of action against a no-fault insurer for recovery of PIP benefits.

### A. COURT OF APPEALS CASELAW

The foundation of any opinion interpreting a statutory provision is the parsing of the words of the pertinent act or statute under review. This case is no exception. Nonetheless, we are presented with decades of Court of Appeals caselaw concluding that a healthcare provider may assert a direct cause of action against a no-fault insurer to recover no-fault benefits. Although this Court is not in any way bound by the opinions of the Court of Appeals, we nevertheless tread cautiously in considering whether to reject a long line of caselaw developed by our intermediate appellate court. That being said, the longevity of a line of Court of Appeals caselaw will not deter this Court from intervening when that caselaw clearly misinterprets the statutory scheme at issue. Correcting erroneous interpretations of statutes furthers the rule of law by conforming the caselaw of this state to the language of the law as enacted by the representatives of the people. And it is imperative that this Court aim to conform our caselaw to the text of the applicable

---

[15] MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.").

statutes to ensure that those to whom the law applies may look to those statutes for a clear understanding of the law.[16] We therefore begin our analysis with a brief discussion of how this issue developed in the Court of Appeals.

There are three cases on which the Court of Appeals has frequently relied when concluding that a healthcare provider may directly sue a no-fault insurer. The first is *LaMothe v Auto Club Ins Ass'n*,[17] in which the panel opined that it could "anticipate that health care services providers, as practical litigants, would bypass the insured and directly sue, pursuant to third-party beneficiary theories, the entity with prospects identical to their own for engendering jury sympathy—the insurer." Significantly, the *LaMothe* parties did not litigate whether the no-fault act permits such a direct cause of action because the insurer had agreed via contractual provision "to fully defend and indemnify the insured from liability . . . ."[18]

The following year, in *Munson Med Ctr v Auto Club Ins Ass'n*,[19] the Court of Appeals stated that the defendant insurer's "obligation to pay" and the plaintiff healthcare

---

[16] *Robinson v Detroit*, 462 Mich 439, 467; 613 NW2d 307 (2000) (stating that "it is to the words of the statute itself that a citizen first looks for guidance in directing his actions," because "the essence of the rule of law" is "to know in advance what the rules of society are").

[17] *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577, 586; 543 NW2d 42 (1995).

[18] *Id*. at 583. The Court of Appeals quoted a letter that the insurer sent the insured's attorney, which stated in part that "[i]f any of the medical providers bring a claim against [the insured], [the insurer] will defend and indemnify him. In fact, [the insurer] will waive any technical defects and allow the provider to sue the [insurer] directly so that [the insured] won't even have to be a party to the litigation." *Id*. at 583 n 4.

[19] *Munson Med Ctr v Auto Club Ins Ass'n*, 218 Mich App 375, 381; 554 NW2d 49 (1996).

8

provider's "right to be paid for the injureds' no-fault medical expenses arise pursuant to MCL 500.3105, 500.3107, and 500.3157 . . . ." But there was no indication that this "right" was in dispute; the central issue in the case concerned the meaning of "customary charges." Moreover, while the panel cited particular statutory provisions, it did not parse the language of those provisions or provide any meaningful analysis to support the implication that a healthcare provider possesses a direct cause of action against a no-fault insurer for PIP benefits.

Also frequently cited for the proposition that a healthcare provider may directly sue a no-fault insurer is *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins Co*.[20] But as in *LaMothe*, the issue was neither presented nor decided in *Lakeland* because the defendant insurer in *Lakeland* "did not dispute that plaintiff had the legal right to commence this action for payment of medical services rendered to defendant's insured."[21] Instead, the litigated issue was whether the provider could recover penalty interest under MCL 500.3142 and attorney fees under MCL 500.3148.[22]

None of these cases decided whether healthcare providers possess a statutory cause of action against no-fault insurers. Despite this, subsequent panels of the Court of Appeals have, in published and unpublished cases alike, consistently relied on one or more of the cases just discussed as if they had decided the issue, generally failing to

---

[20] *Lakeland Neurocare Ctrs v State Farm Mut Auto Ins Co*, 250 Mich App 35; 645 NW2d 59 (2002).

[21] *Id*. at 37.

[22] *Id*. at 44.

engage in any statutory analysis of their own to ground a healthcare provider's cause of action in the text of the no-fault act. This is aptly illustrated by the cases cited by the Court of Appeals in the instant case for the proposition that "it is . . . well settled that a medical provider has independent standing to bring a claim against an insurer for the payment of no-fault benefits."[23] Like *LaMothe*, *Munson*, and *Lakeland*, none of the cases cited by the Court of Appeals provides any textual analysis of the no-fault act to support this proposition.[24]

---

[23] *Covenant*, 313 Mich App at 54, citing *Wyoming Chiropractic Health Clinic, PC v Auto-Owners Ins Co*, 308 Mich App 389, 396-397; 864 NW2d 598 (2014); *Moody v Home Owners Ins Co*, 304 Mich App 415, 440; 849 NW2d 31 (2014), rev'd sub nom on other grounds by *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211; 884 NW2d 238 (2016); *Mich Head & Spine Institute, PC v State Farm Mut Auto Ins Co*, 299 Mich App 442, 448 n 1; 830 NW2d 781 (2013); *Lakeland Neurocare*, 250 Mich App at 42-43; *Regents of the Univ of Mich v State Farm Mut Ins Co*, 250 Mich App 719, 733; 650 NW2d 129 (2002).

[24] The panel in the instant case cited *Wyoming Chiropractic*, 308 Mich App at 396-397, in which the Court of Appeals did not itself analyze any section of the no-fault act to conclude that the no-fault act established a cause of action for healthcare providers. Instead, the panel in *Wyoming Chiropractic* relied on prior cases leading back to *Munson* and *Lakeland* as already having established this premise as "fact." The instant panel also cited *Moody*, 304 Mich App 415, and *Regents of the Univ of Mich*, 250 Mich App 719, both of which stated in a cursory manner that healthcare providers possess a claim or cause of action against no-fault insurers without citing any statutes or otherwise substantively addressing the issue. In *Moody*, the Court of Appeals recognized, without analyzing, that a provider could "bring an independent cause of action against a no-fault insurer," but that the provider's claim was "completely derivative of and dependent on" the claim of the patient insured. *Moody*, 304 Mich App at 440. In *Regents of the Univ of Mich*, the panel concluded that while the claims of the medical providers were "derivative claims, they also ha[d] direct claims for personal protection insurance benefits." *Regents of the Univ of Mich*, 250 Mich App at 733, citing *Munson*, 218 Mich App 375, and *LaMothe*, 214 Mich App at 585-586. This language in *Regents of the Univ of Mich* appears in a passage discussing whether MCL 600.5821(4) or MCL 500.3145(1) governs the statute of limitations applicable when a political subdivision of the state is the plaintiff in a no-fault action; the opinion did not itself analyze the issue of a provider's

10

In sum, the Court of Appeals' decision in this case was premised on the notion that a healthcare provider possesses a statutory cause of action against a no-fault insurer for payment of no-fault benefits. The panel gleaned this notion not from the text of the no-fault act, but from previous decisions of the Court of Appeals that are likewise devoid of the statutory analysis necessary to support that premise. We find this caselaw unconvincing, and unlike the Court of Appeals panel, we are not bound by the conclusion that a healthcare provider possesses a right to bring a direct cause of action against a no-fault insurer to recover PIP benefits under the no-fault act. We instead rely on the language of the no-fault act itself to answer the question presented in this case.

## B. STATUTORY ANALYSIS

It bears repeating that completely absent from the analysis in the Court of Appeals cases discussed earlier is a meaningful explanation of what language in the no-fault act creates a cause of action for healthcare providers against insurers. And indeed, the no-fault act does not, in any provision, explicitly confer on healthcare providers a direct cause of action against insurers. In fact, only two sections of the act, MCL 500.3157 and MCL 500.3158, even mention healthcare providers. MCL 500.3157 states:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution

right to directly sue a no-fault insurer. The only other case cited by the Court of Appeals is *Mich Head & Spine Institute*, 299 Mich App at 448 n 1, but the panel in that case merely referred to the phrase "for the benefit of" in MCL 500.3112 and added "which this Court has recognized creates an independent cause of action for healthcare providers." The Court cited only *Lakeland*, without providing any statutory analysis of its own.

11

providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.

MCL 500.3158(2) states:

A physician, hospital, clinic or other medical institution providing, before or after an accidental bodily injury upon which a claim for personal protection insurance benefits is based, any product, service or accommodation in relation to that or any other injury, or in relation to a condition claimed to be connected with that or any other injury, if requested to do so by the insurer against whom the claim has been made, (a) shall furnish forthwith a written report of the history, condition, treatment and dates and costs of treatment of the injured person and (b) shall produce forthwith and permit inspection and copying of its records regarding the history, condition, treatment and dates and costs of treatment.

The former provision, MCL 500.3157, merely sets forth a limitation on the charges that may be assessed by a healthcare provider for treatment of an injured person. That a provider has the right to charge a reasonable amount for its products, services, or accommodations in no way obligates an insurance carrier to directly reimburse the provider for those charges. The latter provision, MCL 500.3158(2), simply requires that a healthcare provider make the injured person's medical records and certain treatment information available to the insurer. Neither of these provisions, by their express terms or by implication, confers on a healthcare provider a right to sue a no-fault insurer for reimbursement of the amounts it charged for treatment. Therefore, any such statutory right must be found in the sections of the no-fault act that do not explicitly refer to healthcare providers.

Plaintiff urges us to find support for a healthcare provider's direct cause of action in MCL 500.3105 and MCL 500.3107. MCL 500.3105(1) makes a no-fault insurer liable

for the payment of PIP benefits. MCL 500.3105(1) states that "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3107 provides that "personal protection insurance benefits are payable for" certain costs, including "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," MCL 500.3107(1)(a), and "[w]ork loss consisting of loss of income from work," MCL 500.3107(1)(b). According to plaintiff, because benefits are payable for "reasonable charges" under MCL 500.3107(1)(a), including charges incurred for services rendered by healthcare providers under MCL 500.3157, the no-fault insurer must directly pay the provider's reasonable charges.

MCL 500.3105 and MCL 500.3107, when taken together, provide that an insurer is liable to pay benefits for certain listed costs. Yet these provisions do nothing more than define the scope and nature of the requisite coverage. They do not identify to whom the insurer is liable or who has the right to assert a claim for benefits. Further, the language of MCL 500.3107(1)(a), which pertains to allowable expenses like those at issue here, is not amenable to an interpretation that would allow a healthcare provider to sue an insurer for reimbursement. MCL 500.3107(1)(a) provides that benefits are "payable" for "[a]llowable expenses consisting of all reasonable charges *incurred . . . .*" In the context of the no-fault act, this Court has defined "incur" as " '[t]o become liable

13

or subject to, [especially] because of one's own actions.' "[25]  Charges for healthcare services rendered are not "incurred" by a healthcare provider because a provider is not subject to charges for the products, services, and accommodations it delivers to others. Nor do providers become "liable" for allowable expenses.  Rather, charges for healthcare are incurred by others, most commonly patients, and those patients are the ones who become liable for payment of those charges.  Therefore, because a healthcare provider does not incur reasonable charges and is not liable for allowable expenses, plaintiff's argument that MCL 500.3107(1)(a) permits a provider to directly sue an insurer for reimbursement is not persuasive.[26]  Moreover, plaintiff's interpretation of MCL 500.3107(1)(a) improperly requires the Court to read into MCL 500.3107(1)(a) a meaning that the Legislature did not manifest through the words of MCL 500.3107(1)(a) itself.[27]

Plaintiff, like previous panels of the Court of Appeals,[28] largely relies on MCL 500.3112 in support of its argument that healthcare providers possess a direct cause of action against no-fault insurers.  That provision states in full:

---

[25] *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003), quoting *Webster's II New College Dictionary* (2001) (alterations in original).

[26] Plaintiff also points to the word "payable" in MCL 500.3107 to argue that no-fault benefits are to be paid to a healthcare provider for all reasonable charges for medical treatment.  But MCL 500.3107 is silent regarding to whom the benefits are payable. Plaintiff does not explain how this provision vests a provider with rights against an insurer or otherwise indicates that benefits are payable to a provider.

[27] See *Roberts*, 466 Mich at 63.

[28] See, e.g., *Chiropractors Rehab Group, PC v State Farm Mut Auto Ins Co*, 313 Mich App 113; 881 NW2d 120 (2015); *Wyoming Chiropractic*, 308 Mich App 389.

Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents. Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person. If there is doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled thereto, the insurer, the claimant or any other interested person may apply to the circuit court for an appropriate order. The court may designate the payees and make an equitable apportionment, taking into account the relationship of the payees to the injured person and other factors as the court considers appropriate. In the absence of a court order directing otherwise the insurer may pay:

(a) To the dependents of the injured person, the personal protection insurance benefits accrued before his death without appointment of an administrator or executor.

(b) To the surviving spouse, the personal protection insurance benefits due any dependent children living with the spouse. [MCL 500.3112.]

While this section, which addresses to whom PIP benefits are payable, undoubtedly allows for the common practice of no-fault insurers directly paying healthcare providers, its text does not require direct payment of healthcare providers or give providers any right to directly sue a no-fault insurer, as will be evidenced through a sentence-by-sentence examination of the provision.

The first sentence, which provides that PIP benefits "are payable to or for the benefit of an injured person or, in the case of his death, to or for the benefit of his dependents," addresses both allowable expenses and survivor's loss and sets forth the groups of persons to whom an insurer may direct payment to discharge its liability to the insured. The Legislature's use of the disjunctive word "or" indicates "an alternative or

15

choice between two things."[29]  The word immediately preceding the disjunctive options is "payable," which is defined by the *Merriam-Webster's Collegiate Dictionary* to mean "that may, can, or must be paid."[30]  Therefore, according to the first sentence of MCL 500.3112, PIP benefits, which are paid by the insurer, "may, can, or must be paid" either (1) to the injured person *or* (2) for the benefit of the injured person.  In the case of the injured person's death, PIP benefits "may, can, or must be paid" either (1) to the decedent's dependents *or* (2) for the benefit of those dependents.  This sentence does nothing more than allow a no-fault insurer to satisfy its obligation to the insured by paying the injured person directly or by paying a party providing PIP services on the injured person's behalf.  That a third party may *receive* payment directly from an insurer for PIP benefits does not mean that the third party has a statutory *entitlement* to that method of payment.

Plaintiff urges us to find, like previous Court of Appeals panels have, a provider cause of action in MCL 500.3112's phrase, "for the benefit of the injured person."  This language, however, does not state that benefits are payable "to the provider," or otherwise indicate that a provider itself has an entitlement to benefits.  To the contrary, it expressly

---

[29] See *People v Kowalski*, 489 Mich 488, 499 n 11; 803 NW2d 200 (2011) (" 'Or' is . . . a disjunctive [term], used to indicate a disunion, a separation, an alternative.") (quotation marks and citation omitted; alteration in original).

[30] *Merriam-Webster's Collegiate Dictionary* (11th ed).  "Payable" is not defined in the no-fault act.  We therefore presume that the Legislature intended for the word to have its common and ordinary meaning.  MCL 8.3a.  To assist in determining the ordinary meaning of relevant words, this Court may consult a dictionary.  *Klooster v Charlevoix*, 488 Mich 289, 304; 795 NW2d 578 (2011).

leaves that entitlement with the injured person and merely recognizes that one who does not have a direct cause of action against a no-fault insurer may be paid directly by the insurer, but only in order to benefit the injured person. Simply stated, nothing in the first sentence is properly construed as bestowing a statutory cause of action on the injured person's healthcare provider.

The second sentence of MCL 500.3112 reads:

> Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person.

This sentence allows a no-fault insurer to discharge its liability through payment to or for the benefit of a person it believes is entitled to benefits, as long as the payment is made in good faith and the insurer has not been previously "notified in writing of the claim of some other person." Plaintiff argues that healthcare providers qualify as "some other person" for purposes of this sentence. Even if this were so, plaintiff still has not demonstrated a legal right of action against a no-fault insurer. The phrase "claim of some other person" does not itself confer on any person a "claim"[31] or "right" to recover benefits. Rather, it presupposes that "some other person" otherwise possesses a claim for

---

[31] Because the no-fault act does not define "claim," we may consult a dictionary definition. *Klooster*, 488 Mich at 304. The relevant dictionary definitions of "claim" include "a demand for something due or believed to be due" and "a right to something." *Merriam-Webster's Collegiate Dictionary* (11th ed). Therefore, to have a "claim" under the no-fault act, a provider must have a right to payment of PIP benefits from a no-fault insurer.

PIP benefits against the insurer.[32] Significantly, plaintiff is unable to demonstrate that the no-fault act elsewhere confers on a healthcare provider a right to claim benefits from a no-fault insurer.

The third sentence of MCL 500.3112 reads, "If there is doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled thereto, the insurer, the claimant or any other interested person may apply to the circuit court for an appropriate order." This sentence merely provides a procedure for resolving doubts about which persons are entitled to benefits; it does not itself confer a right or entitlement on any person, including a healthcare provider, to sue a no-fault insurer.[33] And the sentence's reference to "apportionment" cannot logically pertain to allowable expenses like the reasonable charges incurred for healthcare services, because an injured

---

[32] We need not decide precisely to whom this sentence applies in order to conclude that it does not confer on a healthcare provider the right to sue for payment of benefits. It seems, however, that this sentence is likely applicable primarily to dependents and survivors given that the end of the statute pertains to the allocation of benefits to those groups of persons.

[33] Plaintiff argues that a healthcare provider qualifies as a "person" for purposes of the third sentence of MCL 500.3112 given that the Insurance Code, in MCL 500.114, defines the word "person" to include corporate entities, like healthcare providers. But this Court long ago recognized that, given its inconsistent use throughout the no-fault act, "the term 'person' must be construed in the exact context in which it is used to ascertain its precise meaning." *Belcher v Aetna Cas and Surety Co*, 409 Mich 231, 258; 293 NW2d 594 (1980). Plaintiff has not explained why "person," in the context of the third sentence of MCL 500.3112, refers to a corporate entity like a healthcare provider. In any event, even if a healthcare provider were a "person" for purposes of this sentence, the sentence itself, as discussed, does not purport to create or confer any rights with respect to the "persons" covered by its doubt-resolution procedure.

person owes the provider, and is entitled to PIP benefits for, the entirety of those allowable expenses under MCL 500.3107(1)(a), not an apportioned amount.[34]

Finally, the fourth sentence provides, "The court may designate the payees and make an equitable apportionment, taking into account the relationship of the payees to the injured person and other factors as the court considers appropriate." And the fifth sentence addresses the payment of dependent and survivor benefits in the absence of a court order. These sentences contain no language that can be reasonably understood as creating a right for a healthcare provider to directly sue a no-fault insurer. As in the third sentence, the reference to "apportionment" in the fourth sentence is inapplicable in the context of charges for services rendered by a healthcare provider. Similarly, the fourth sentence's call for the court to take into account "the relationship of the payees to the

---

[34] See *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012) (noting that MCL 500.3107(1) allows "unlimited lifetime benefits" for allowable expenses). In contrast, apportionment of benefits is necessary when the allowable benefits are finite in amount, as is the case with survivor's loss benefits. See MCL 500.3108(1).

Again, we need not decide precisely to whom this sentence pertains in order to conclude that it does not confer on a healthcare provider the right to sue for payment of benefits. Nonetheless, we note that it would seem to primarily pertain to dependent and survivor benefits. There are several scenarios in which there could be doubt regarding the proper dependent or survivor to receive benefits. For example, under MCL 500.3110(1), doubt could emerge about whether a surviving spouse or a minor child is a proper person to receive benefits if it were unclear whether they were living in the same house as the victim. Doubt could also emerge under MCL 500.3110(2) regarding the proper apportionment of benefits because "the extent of [one's] dependency shall be determined in accordance with the facts as they exist at the time of death." Similarly, doubt could emerge under MCL 500.3110(3) because this subsection conditions "dependent" status on particular factual inquiries. In those circumstances, a hearing might be necessary for the circuit court to "designate the payees and make an equitable apportionment" of benefits. MCL 500.3112.

injured person" is inapt in the context of a healthcare provider's bill for services rendered. If the injured person qualifies for benefits, the insurer is liable under MCL 500.3107(1)(a) to pay "all reasonable charges incurred" by the injured person; no further inquiry into the "relationship" between the injured person and the provider is relevant.[35] And the fifth sentence on its face pertains only to payment to dependents and survivors. Therefore, the fourth and fifth sentences clearly do not create a statutory cause of action for healthcare providers.

While plaintiff primarily cites MCL 500.3112 as establishing a healthcare-provider cause of action under the no-fault act, there is nothing in the language of this provision that can reasonably be interpreted as vesting a healthcare provider with a right to demand reimbursement from a no-fault insurer for services the provider rendered to an insured. Although this provision allows insurers to pay a provider of no-fault services directly "for the benefit of" the insured, it does not establish a concomitant claim enforceable by an insured's benefactors.[36] Plaintiff has not pointed to any other

---

[35] In contrast, the relationship between a payee and an injured person is relevant when survivor and dependent benefits are at issue. Certain individuals are conclusively presumed to be dependents under MCL 500.3110(1) but when one of those conclusive relationships is not at issue, "questions of dependency and the extent of dependency shall be determined in accordance with the facts as they exist at the time of death" under MCL 500.3110(2), which may require an inquiry into the parties' relationship.

[36] The dissent asserts that this conclusion "renders surplusage the possibility of payment to a third party like a healthcare provider." This is not so. By permitting insurers to directly pay healthcare providers on the injured person's behalf, MCL 500.3112 allows the insurer to eliminate the insured as a conduit in the payment process, relieving the insured from having to redirect to the healthcare provider payment received from the insurer. It is not surplusage for the statute to expressly permit an insurer to directly pay its insured's healthcare bills in order to discharge its obligation to its insured. The fact

20

provision in the no-fault act that bestows on healthcare providers a right to directly sue a

no-fault insurer.[37]

_____

that the statute grants that permission does not create a right in the providers to sue the
insurer for payment.

[37] Other provisions cited by plaintiff in support of its argument that healthcare providers
have a direct claim of their own are MCL 500.3145(1) and MCL 500.3148.

MCL 500.3145(1), the no-fault statute of limitations provision, provides that "[a]n
action for recovery of personal protection insurance benefits payable under this chapter
for accidental bodily injury may not be commenced later than 1 year after the date of the
accident causing the injury . . . ."  Plaintiff argues that this provision does not only permit
the injured person to bring a lawsuit, but that it plainly allows a timely lawsuit for
recovery of PIP benefits "payable under this chapter" and that under MCL 500.3107,
MCL 500.3157, and MCL 500.3112, allowable expenses are payable to healthcare
providers.  Consequently, plaintiff contends that MCL 500.3145(1) contemplates that
providers will bring lawsuits to recover benefits.  According to plaintiff, the third
sentence of MCL 500.3145(1) confirms this interpretation by stating that "the claimant
may not recover benefits for any portion of the loss incurred more than 1 year before the
date on which the action was commenced."  Under plaintiff's interpretation, the
Legislature's use of the word "claimant," instead of "injured person," demonstrates that
other persons, like providers, may bring lawsuits to recover PIP benefits.

MCL 500.3148, which pertains to attorney fees, states in part that "[a]n attorney is
entitled to a reasonable fee for advising and representing a claimant in an action for
personal or property protection insurance benefits which are overdue."  MCL
500.3148(1).  Plaintiff similarly argues that the statute's reference to "claimant" rather
than "injured person" indicates that healthcare providers have the right to bring an
independent lawsuit for payment of PIP benefits.

Plaintiff's reliance on the references to "claimant" rather than "injured person" in
MCL 500.3145(1) and MCL 500.3148 is helpful to plaintiff's argument only if healthcare
providers are proper claimants under the no-fault act.  The provisions cited by plaintiff do
not establish that providers possess a claim under the act.  Because MCL 500.3145(1) and
MCL 500.3148 do not create rights to PIP benefits that do not otherwise exist, plaintiff's
reliance on these provisions is misplaced.

21

Two textual clues found elsewhere in the no-fault act support the conclusion that a healthcare provider does not possess a statutory cause of action against a no-fault insurer. The priority statutes, MCL 500.3114 and MCL 500.3115, define against whom an individual may make a claim for benefits. The default rule for priority is found in MCL 500.3114(1), which states, in part, that "a personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household . . . ." "Person" in this instance cannot mean a healthcare provider because providers are not named in the PIP insurance policy and quite simply do not sustain accidental bodily injuries. MCL 500.3114(2) states that "[a] person suffering accidental bodily injury . . . shall receive the [PIP] benefits to which the person is entitled from the insurer of the motor vehicle," and MCL 500.3114(4), (5), and (6) prioritize the order in which "a person suffering accidental bodily injury arising from a motor vehicle accident . . . shall claim personal protection insurance benefits from [multiple] insurers[.]" MCL 500.3115(1) similarly sets forth the insurer priority for "a person suffering accidental bodily injury while not an occupant of a motor vehicle," and it provides that those persons "shall claim [PIP] benefits" in the order provided in MCL 500.3115(1). In both of these provisions, the Legislature specifically contemplates that the entitlement or claim belongs to the person who has "sustained accidental bodily injury," and the statutory language goes into great detail regarding the priority of insurers for claims by a person suffering such injury. Notably lacking from these entitlement

provisions is any arguable reference to or contemplation of a healthcare provider's entitlement to benefits under the no-fault act.[38]

In sum, a review of the plain language of the no-fault act reveals no support for plaintiff's argument that a healthcare provider possesses a statutory cause of action

---

[38] This conclusion is consistent with *Belcher*, 409 Mich at 236, in which this Court considered whether "no-fault insurance benefits [are] to be paid to the surviving dependent(s) of a deceased uninsured motorist[.]" (Quotation marks and citation omitted.) In analyzing this issue, this Court opined that the no-fault act "operates to compensate only a limited class of persons for economic losses sustained as a result of motor vehicle accidents. Under personal protection insurance, benefits are made payable only to injured persons or surviving dependents of the injured person." *Id*. at 243-244. The Court further described MCL 500.3114 and MCL 500.3115 as the no-fault act's only entitlement provisions "in the sense that they are the only sections where persons are given the right to claim personal protection insurance benefits from a specific insurer." *Id*. at 252. *Belcher* is not directly applicable in this case because it did not examine whether a healthcare provider possesses a cause of action under the no-fault act. Contrary to the dissent's assertion, we do not rely on *Belcher* to exclude the possibility of a provider claim, nor do we contend that an injured person's cause of action under the no-fault act derives entirely from MCL 500.3114 and MCL 500.3115. Instead, we simply note that *Belcher*'s holding is consistent with our independent conclusion that healthcare providers possess no statutory cause of action because, just like the remainder of the no-fault act, neither MCL 500.3114 nor MCL 500.3115 contemplate that a healthcare provider may directly claim recovery for the cost of providing PIP benefits.

Moreover, in *Belcher* this Court concluded that, while the text of the entitlement provisions gives only injured persons the right to assert a claim for benefits against a no-fault insurer, the Legislature clearly intended that surviving dependents recover certain losses in the event that the injured person dies, as evidenced by the provision of benefits for survivors in MCL 500.3108 and MCL 500.3112. *Id*. at 254-255. To effectuate the intent made explicit in the statutory language, the Court inferred from the language of MCL 500.3114 and MCL 500.3115 that when an injured person is given the right to recover benefits from a specific insurer, the surviving dependents have the same right of recovery for their losses. *Id*. at 255. Contrary to the dissent's belief, no similar statutory basis exists for recognizing this type of claim on the part of an injured person's healthcare provider. We will not infer a cause of action for healthcare providers when the language of the no-fault act indicates no such desire on the part of the Legislature.

23

against a no-fault insurer.[39] This conclusion does not mean that a healthcare provider is without recourse; a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges.[40] However, a provider simply has no statutory cause of action of its own to directly sue a no-fault insurer. Accordingly, we overrule all Court of Appeals caselaw inconsistent with this conclusion.

## IV. APPLICATION

Given our conclusion that healthcare providers possess no statutory cause of action under the no-fault act, it is unnecessary to consider the substance of the Court of Appeals' opinion. Because a healthcare provider possesses no statutory right to sue a no-fault insurer, we need not examine whether a release executed between an insured and an insurer releases an insurer's liability for a healthcare provider's "claim." Further, the

---

[39] We conclude today only that a healthcare provider possesses no statutory right to sue a no-fault insurer. While defendant argues that a provider likewise possesses no contractual right to sue a no-fault insurer given that healthcare providers are incidental rather than intended beneficiaries of a contract between the insured and the insurer, this Court declines to make such a blanket assertion. That determination rests on the specific terms of the contract between the relevant parties. See *Schmalfeldt v N Pointe Ins Co*, 469 Mich 422, 428; 670 NW2d 651 (2003) ("A person is a third-party beneficiary of a contract only when *that contract* establishes that a promisor has undertaken a promise 'directly' to or for that person.") (citations omitted; emphasis added). This Court need not consider whether plaintiff possesses a contractual right to sue defendant in the instant case because plaintiff did not allege any contractual basis for relief in its complaint.

[40] See *Miller v Citizens Ins Co*, 490 Mich 904 (2011). Moreover, our conclusion today is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider. See MCL 500.3143; *Professional Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 172; 577 NW2d 909 (1998) (noting that only the assignment of future benefits is prohibited by MCL 500.3143).

24

release executed in this case between Stockford and defendant does not appear to extinguish Stockford's liability to plaintiff. And nothing in this opinion would bar plaintiff from seeking reimbursement of the amount due it directly from Stockford, the person to whom services were provided.[41]

## V. CONCLUSION

The Court of Appeals' opinion in this case is premised on the notion that an injured person's healthcare provider has an independent statutory right to bring an action against a no-fault insurer for payment of no-fault benefits. This premise is unfounded and not supported by the text of the no-fault act. A healthcare provider possesses no statutory cause of action under the no-fault act against a no-fault insurer for recovery of PIP benefits. Plaintiff therefore has no statutory entitlement to proceed with its action against defendant. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the Saginaw Circuit Court for entry of an order granting summary disposition to defendant.

> Brian K. Zahra
> Stephen J. Markman
> Bridget M. McCormack
> David F. Viviano
> Joan L. Larsen

---

[41] See *Miller*, 490 Mich at 904.

STATE OF MICHIGAN

SUPREME COURT

COVENANT MEDICAL CENTER, INC.,

      Plaintiff-Appellee,

v                                     No. 152758

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellant.

_____

BERNSTEIN, J. (*dissenting*).

I respectfully disagree with the majority's conclusion that healthcare providers do not possess a cause of action under Michigan's no-fault act, MCL 500.3101 *et seq*., to recover personal protection insurance (PIP) benefits from a no-fault insurer for services provided to an insured. I believe that MCL 500.3112 establishes that an independent action may be brought by a healthcare provider against a no-fault insurer and that the majority's contrary construction is not supported by the plain language of the statute. Accordingly, I would affirm the judgment of the Court of Appeals.

I. FACTS AND PROCEDURAL HISTORY

Jack Stockford, who held no-fault insurance through defendant, State Farm Mutual Automobile Insurance Company, was injured in a motor vehicle accident on June 20, 2011. Plaintiff, Covenant Medical Center, Inc., provided medical services to Stockford on multiple occasions in the following months. Plaintiff sent defendant bills for these

services totaling $43,484.80 on July 3, 2012, August 2, 2012, and October 9, 2012. Defendant sent plaintiff a written denial of payment on November 15, 2012.

Meanwhile, apparently unbeknownst to plaintiff, Stockford had filed suit against defendant on June 4, 2012, seeking PIP benefits for expenses arising out of the June 20 accident. Stockford entered into an agreement with defendant on April 2, 2013, by which defendant consented to pay Stockford $59,000 in exchange for a full and final release "regarding all past and present claims incurred through January 10, 2013, for what are commonly referred to as first party benefits or personal injury protection benefits . . . ." As part of this broad release, Stockford agreed to indemnify defendant against claims made by any providers. Plaintiff was specifically named in this portion of the release agreement.

Plaintiff did not learn of the release until it filed suit against defendant on April 25, 2013. Defendant was granted summary disposition pursuant to MCR 2.116(C)(7) under the theory that Stockford's release barred plaintiff's claim. The Court of Appeals reversed in a published per curiam opinion, concluding that defendant's settlement agreement with Stockford had not been a "good faith" payment that could discharge its liability to plaintiff under MCL 500.3112. *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 313 Mich App 50; 880 NW2d 294 (2015).

## II. ANALYSIS

I agree with the majority that none of the caselaw relied on by the Court of Appeals directly addressed the question of whether healthcare providers have an independent cause of action for PIP benefits under the no-fault act. However, this does

2

not necessarily mean that the Court of Appeals' longstanding interpretation of the no-fault act was inconsistent with the plain language of the statute. While no provision of the no-fault act confers a direct cause of action specific to healthcare providers, the plain language of MCL 500.3112 suggests that such a cause exists. Furthermore, although no provision of the no-fault act explicitly states that a healthcare provider may have a claim for PIP benefits, healthcare providers are no different in this regard from any other would-be claimant under the no-fault act, including injured people themselves.

No provision of the no-fault act expressly defines "claimant." However, provisions such as MCL 500.3112 contemplate who may *receive* PIP benefits under the no-fault act, and the ability to receive benefits is necessary in order to claim them. Absent any specific statement establishing who may bring a claim for PIP benefits, we must consider the plain language of MCL 500.3112, which provides:

> Personal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents. Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person. If there is doubt about the proper person to receive the benefits or the proper apportionment among the persons entitled thereto, the insurer, the claimant or any other interested person may apply to the circuit court for an appropriate order. The court may designate the payees and make an equitable apportionment, taking into account the relationship of the payees to the injured person and other factors as the court considers appropriate. In the absence of a court order directing otherwise the insurer may pay:
>
> (a) To the dependents of the injured person, the personal protection insurance benefits accrued before his death without appointment of an administrator or executor.

3

(b) To the surviving spouse, the personal protection insurance benefits due any dependent children living with the spouse.

The first sentence of MCL 500.3112 suggests that healthcare providers have a claim for PIP benefits. It provides that PIP benefits "are payable to or for the benefit of an injured person or, in the case of his death, to or for the benefit of his dependents." MCL 500.3112. As the majority notes, this plainly means that insurers may pay benefits directly to healthcare providers, because such a payment would be "for the benefit of" the injured person or the injured person's dependents. *Id*. The majority clearly believes that an injured person is entitled to bring an action to recover these benefits, hanging its hat on the "shall claim" language of MCL 500.3114 and MCL 500.3115. But this language no more establishes an entitlement to make a legal claim than does the "payable to or for the benefit of" language of MCL 500.3112.

In the absence of any express entitlement provision in MCL 500.3112, the majority insists that MCL 500.3114 and MCL 500.3115 function as entitlement provisions for injured persons. However, as the majority admits, these are priority statutes that govern the order of priority among insurers rather than explicitly defining who may be a claimant under the no-fault act. The majority asserts that these two provisions are entitlement provisions because they include language to the effect that an injured person " 'shall claim [PIP] benefits,' " *ante* at 22 (alteration in original), but this interpretation ignores the context in which that language appears. The "shall claim" language appears in MCL 500.3114(4) and (5) and MCL 500.3115(1). In each of those provisions, the "shall claim" language is part of the longer phrase "shall claim [PIP] benefits from insurers in the following order of priority," immediately followed by a list

4

of the insurers that may be required to pay benefits. MCL 500.3114(4) and (5); MCL 500.3115(1). The mandate of these statutes is not to define who must *receive* benefits, but who must *pay* them.

Indeed, MCL 500.3114 and MCL 500.3115 cannot possibly define the bounds of who can bring an action for PIP benefits. The majority's reliance on *Belcher v Aetna Cas & Surety Co*, 409 Mich 231, 251-252; 293 NW2d 594 (1980), for the proposition that MCL 500.3114 and MCL 500.3115 are entitlement provisions that exclude the possibility of a provider claim is inapt. Although the *Belcher* Court referred to MCL 500.3114 and MCL 500.3115 as entitlement provisions in some sense, it rejected the notion that these two sections of the no-fault act constituted the be-all and end-all of potential PIP benefit claimants, remarking that neither provision gave survivors an express right to claim benefits even though survivors' benefits are clearly recognized in MCL 500.3108 and MCL 500.3112. *Belcher*, 409 Mich at 254-255.

The *Belcher* Court was right. A finding that MCL 500.3114 and MCL 500.3115 are the only statutes in the no-fault act that establish an entitlement to a legal claim would render nugatory the language in MCL 500.3112 that permits payment of benefits to dependents and to other parties for the benefit of the injured person (a group of recipients that the majority concedes would include healthcare providers). See *ante* at 15. Such a reading would run counter to the rule of statutory interpretation barring us from interpreting statutes in a manner that would render any portion of a statute surplusage or nugatory. *Wyandotte Electrical Supply Co v Electrical Tech Sys, Inc*, 499 Mich 127, 140; 881 NW2d 95 (2016). Therefore, I cannot interpret MCL 500.3114 and MCL 500.3115

5

as the only provisions in the no-fault act that establish an entitlement to a legal claim for PIP benefits.

Nor can I conclude that MCL 500.3112 supports the notion that injured persons have a cause of action for PIP benefits but healthcare providers do not. MCL 500.3112 makes PIP benefits "payable"—that is, benefits "that may, can, or must be paid"[1]—to either the injured person *or* to someone else for that person's benefit, e.g., a healthcare provider. The statute does not treat these options differently. It is inconsistent to conclude that healthcare providers do not have an entitlement to PIP benefits while an injured person does. Healthcare providers cannot be barred from seeking to enforce their right to payment under this provision.[2]

The remainder of MCL 500.3112 does not undercut the conclusion that providers have an entitlement to a legal claim for PIP benefits. Indeed, the remainder of this provision does not discuss entitlement to benefits, but rather delineates procedures to be followed when there is some dispute among claimants to benefits. The second sentence of MCL 500.3112 explains that a good-faith payment of PIP benefits discharges an insurer's liability unless the insurer has received written notice of "the claim of some other person." The third sentence allows an insurer, claimant, or other interested party to seek a court order determining the proper person to receive benefits or the proper

---

[1] *Merriam-Webster's Collegiate Dictionary* (11th ed).

[2] To the extent that the majority argues that healthcare providers are not entitled to benefits because they do not "incur" charges within the meaning of MCL 500.3107(1)(a), it is incorrect. Healthcare providers clearly become liable for expenses arising out of the treatment of injured persons, expenses that include, among other things, human labor (and associated wages and salaries) and the cost of medical equipment and its operation.

6

apportionment of benefits. The fourth permits a court to designate payees or apportion benefits as it considers appropriate, while the remainder of the provision directs an insurer's payment of benefits in the absence of a court order.

The majority suggests that these aspects of MCL 500.3112 are inconsistent with the notion that the no-fault act establishes a healthcare provider's entitlement to a legal claim, but this is simply not the case. Although the directives in MCL 500.3112 do not in themselves entitle healthcare providers to benefits, they do not derogate the entitlement to make a legal claim alluded to in the first sentence of MCL 500.3112. The majority suggests that the bulk of MCL 500.3112 cuts against the notion of a provider claim and must be limited to dependent and survivor benefits, but this is not true. For example, contrary to the majority's assertion, the reference to apportionment in the third sentence is not limited in this fashion. "Apportionment" as used in that sentence could certainly apply to expenses incurred for healthcare services if, for example, an injured person received treatment from multiple providers resulting in PIP-qualifying charges. Nor do the fourth and fifth sentences suggest that the entirety of MCL 500.3112 is limited to dependent and survivor benefits. These sentences instead provide purely discretionary rubrics a trial court may follow when issuing an order. These sentences do not prevent the distribution of benefits to a healthcare provider.

In sum, the no-fault act does not expressly grant healthcare providers the right to directly sue insurers for PIP benefits. But it does not expressly grant that right to any party, not even an insured party injured in a motor vehicle accident. If we are to require an express statutory provision in order to create a cause of action, and no such provision appears in the no-fault act, it would follow that no party could ever bring suit to compel

an insurer to pay PIP benefits. But it simply cannot be that the Legislature created a statutory scheme for the distribution of PIP benefits that no party could ever recover if an insurer denied coverage. MCL 500.3112 permits payment of PIP benefits to either an injured person or to a healthcare provider because direct payment to the provider would be for the benefit of the injured person. To hold that only an injured person is entitled to enforce this right to payment renders surplusage the possibility of payment to a third party like a healthcare provider. To avoid such an interpretation of the language of the no-fault act, healthcare providers must have a claim for PIP benefits.

## III. APPLICATION

Because the no-fault act gives healthcare providers a claim for PIP benefits, I believe that the Court of Appeals reached the correct result in this case. In theory, an agreement like the one between Stockford and defendant could extinguish an insurer's liability for PIP benefits arising out of a particular accident. However, the second sentence of MCL 500.3112 provides:

> Payment by an insurer in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person.

As the Court of Appeals found, the release executed by Stockford and defendant was not in good faith. Defendant had been made aware of plaintiff's claim through the bills plaintiff transmitted to it. However, defendant entered into the settlement with Stockford and sought to permanently foreclose plaintiff's claim for PIP benefits without informing

8

plaintiff.[3]  The Court of Appeals' conclusion that the settlement with Stockford did not constitute a good-faith payment was eminently reasonable, as was the Court's concomitant conclusion that the payment did not discharge defendant's liability as contemplated by the second sentence of MCL 500.3112.

## IV. CONCLUSION

I disagree with the majority's conclusion that the no-fault act does not give healthcare providers the right to bring an action against a no-fault insurer for PIP benefits.  That reading renders nugatory the first sentence of MCL 500.3112, which permits payment of PIP benefits to healthcare providers.  Because I believe that healthcare providers like plaintiff are entitled to enforce the receipt of payment due and that the Court of Appeals correctly concluded that defendant's liability for PIP benefits under MCL 500.3112 was not discharged, I would affirm the judgment of the Court of Appeals.

Richard H. Bernstein

WILDER, J., did not participate in the disposition of this matter.

---

[3]  It is, of course, interesting that in this settlement agreement defendant demanded indemnification against provider claims that it now insists cannot exist under the no-fault act.

9